1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| CHERI L. DURBIN, | NO. C11-395-TSZ-JPD |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Cheri L. Durbin appeals the final decision of the Commissioner of the Social

Security Administration ("Commissioner") which denied her application for Disability

Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-33,

after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below,

the Court recommends that the Commissioner's decision be REVERSED and REMANDED.

I.       FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, plaintiff was a fifty-one year old woman with

a high school education and one year of technical training as a medical assistant.

Administrative Record ("AR") at 38-39. Her past work experience includes employment as a

pharmacy technician from December 1979 to August 2000. AR at 39, 149.

REPORT AND RECOMMENDATION - 1

On March 27, 2007, she filed an application for DIB, alleging an onset date of August 31, 2000. AR at 14, 82. In her application, plaintiff asserted that she was disabled due to fibromyalgia and degenerative disc disease of the cervical spine. AR at 82.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 90-92, 99-100. Plaintiff requested a hearing, which took place on August 7, 2009. AR at 32-81. On August 31, 2009, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform her past relevant work. AR at 16-25. The Appeals Council denied plaintiff's request for review, AR at 1-3, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On April 11, 2011, plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 5.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a

whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.    EVALUATING DISABILITY

As the claimant, Ms. Durbin bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V. DECISION BELOW

On August 31, 2009, the ALJ issued a decision finding the following:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2005.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of August 31, 2000 through her date last insured of December 31, 2005.

3. Through the date last insured, the claimant had the following severe impairments: fibromyalgia, degenerative disc disease, diabetes, sleep apnea, obesity, depression and anxiety.

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity on a sustained basis (i.e. 8 hours per day, 5 days per week, week after week, month after month with a 15 minutes break in the morning and one in the afternoon and a 30-minute lunch break) for a significant period of time to perform light work as defined in 20 C.F.R. 404.1567(b) with an ability to lift and carry 20 pounds occasionally and 10 pounds frequently with a sit/stand option at will and an ability to walk 4 hours in an 8-hour workday. Her ability to push and pull and gross and fine dexterity was unlimited. The claimant was able to occasionally climb stairs but should not climb ladders, ropes, scaffolds or run. She was able to occasionally bend, stoop, crouch, crawl, balance, twist and squat. The claimant should have had limited exposure to vibration. Mentally, the claimant was able to get along with others, understand details instructions, concentrate and perform detailed tasks and adapt to workplace changes and supervision.

1    6.    Through the date last insured, the claimant was capable of performing
           past relevant work as a pharmacy technician. This work did not require
2          the performance of work related activities preclude by the claimant's
           residual functional capacity.

3    7.    The claimant was not under a disability, as defined in the Social
           Security Act, at any time from August 31, 2000, the alleged onset date,
4          through December 31, 2005, the date last insured.

5    AR at 16-25.

6                            VI.    ISSUES ON APPEAL

7        The principal issues on appeal are:

8    1.    Did the ALJ err in evaluating plaintiff's credibility?

9    2.    Did the ALJ err in evaluating the opinion of treating physician, Dr. Anderson?

10   3.    Did the ALJ err by failing to include an opinion regarding the "B" criteria from
           a physician or psychologist?

11
12   4.    Did the ALJ err in assessing plaintiff's RFC by failing to evaluate the amount of
           time plaintiff could sit or stand during a typical work day?

13   5.    Did the ALJ err in evaluating the lay witness testimony of plaintiff's husband,
           Robert Durbin?

14
15   6.    Did the ALJ err by finding that plaintiff could perform her past relevant work?

     Dkt. 16 at 1-2; Dkt. 20 at 1-2.

16

17                           VII.    DISCUSSION

18   A.    The ALJ Erred in Evaluating Plaintiff's Credibility

19       Plaintiff contends that the ALJ failed to provide clear and convincing reasons for

20   rejecting plaintiff's testimony. Dkt. 16 at 15-16. The Commissioner responds that the ALJ

21   properly discredited plaintiff's testimony in this case. Dkt. 20 at 3-8.

22       As noted above, credibility determinations are within the province of the ALJ's

23   responsibilities, and will not be disturbed, unless they are not supported by substantial

24

evidence. A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281; SSR 96-7p. First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82; SSR 96-7p. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick*, 157 F.3d at 722. Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

When evaluating a claimant's credibility, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Smolen*, 80 F.3d at 1284; *see also Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements . . . concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." AR at 21. Specifically, the ALJ cited (1) inconsistency between plaintiff's testimony regarding her

functional limitations and objective medical evidence in the record, and (2) inconsistency between plaintiff's allegations and activities of daily living, and (3) plaintiff's history of noncompliance with her medication and treatment regimen. AR at 21-24.

1.    *Inconsistency Between Testimony and Objective Medical Evidence*

The ALJ found that the objective medical evidence did not support the severity of plaintiff's allegations. AR at 21-23. The ALJ noted that "[f]actors for consideration in evaluating an individual's subjective complaints of pain include whether there is documentation of persistent significant limitations of range of motion, muscle spasm, muscular atrophy from lack of use, significant neurological deficits, weight loss, or impairment of general nutrition and non-alleviation of symptoms by medication." AR at 21. However, the ALJ found that "[n]one of the claimant's examinations disclosed the above findings to any significant degree." AR at 21. Specifically, the ALJ noted that "[r]adiological findings of the lumbar spine in April 2001 showed multilevel degenerative disc and facet degeneration, persistent moderate central/right paracentral L5-21 disc extrusion with right S1 nerve root displacement." AR at 21 (citing AR at 369). The ALJ noted that "[d]espite these findings, in an office visit dated October 4, 2002, the claimant had 5/5 strength. There was evidence of only intermittent dysesthsia upon sensation examination" as well as a full range of motion in the cervical spine. AR at 21 (citing AR at 335). When plaintiff was examined on March 14, 2002, she reported chronic low back pain but significant improvement with Vicodin and Flexeril. AR at 21 (citing AR at 317).

Plaintiff asserts that with the exception of the ALJ's discussion of plaintiff's daily activities, the ALJ's "remaining credibility assessment is not entirely clear" and "the ALJ's piecemeal discussion of the medical evidence does not show that Plaintiff's impairments did not result in the symptoms she alleged." Dkt. 16 at 17. Moreover, because plaintiff has

produced evidence of an underlying impairment, plaintiff asserts that "the ALJ cannot discredit her testimony as to the severity of her symptoms solely because they are unsupported by objective medical evidence." *Id.* (citing *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988)). Plaintiff also contends that contrary to the ALJ's assertion, some of plaintiff's medical examinations did show limited range of motion (AR at 471, 731, 727), spasm (AR at 310, 340, 754, 493, 735, 731), and neurological deficits (AR at 471). Dkt. 16 at 18. Finally, plaintiff claims that the ALJ erred by requiring objective evidence that supports plaintiff's allegations because her primary impairment is fibromyalgia, which "would not be expected to result in most of these objective findings (other than non-alleviation of symptoms by medication)." *Id.* (citing *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004) (holding that the ALJ erred by discounting a plaintiff's credibility based upon the lack of objective evidence for a disease such as fibromyalgia that eludes such measurement)).

The ALJ erred by rejecting plaintiff's testimony on the grounds that it was unsupported by objective medical evidence. The Ninth Circuit has asserted that although "subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of a claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch v. Barchart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); SSR 96–7, *2–3 (the ALJ "must consider the entire case record, including the objective medical evidence" in determining credibility, but statements "may not be disregarded solely because they are not substantiated by objective medical evidence"). Although inconsistency between plaintiff's allegations and the objective

medical evidence was a relevant factor for the ALJ to consider, among others, in determining plaintiff's credibility, the ALJ did not meet his burden in this case of "stat[ing] which pain testimony is not credible and what evidence suggests the claimants are not credible." *Dodrill*, 12 F.3d at 918; *see also Holohan*, 246 F.3d at 1208 ("[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony.").

The ALJ's attempt to discount plaintiff's subjective complaints based upon the lack of corroborating objective evidence was also particularly egregious in this case, in light of the ALJ's acknowledgement that plaintiff suffers from severe fibromyalgia, a disease that is notable for its lack of objective diagnostic techniques. *See Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996). Specifically, the Ninth Circuit has recognized that "[fibromyalgia's] cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia." *Rollins v. Massanari*, 261 F.3d 853, 855 (9th Cir. 2001) (citing *Sarchet*, 78 F.3d at 306). Put differently, "the absence of swelling joints or other orthopedic and neurologic deficits is no more indicative that the patient's fibromyalgia is not disabling than the absence of a headache is an indication that a patient's prostate cancer is not advanced." *Green-Younger v. Barnhart,* 335 F.3d 99, 109 (2d Cir. 2003) (internal quotation omitted). Thus, as argued by the plaintiff, the ALJ erred in this case by "effectively requir[ing] objective evidence for a disease that eludes such measurement." *Benecke v. Barnhart,* 379 F.3d 587, 594 (9th Cir. 2004) (internal citations omitted).

This does not mean that every claimant asserting fibromyalgia receives a pass to a disability finding. It does mean, however, that an ALJ who does not consider a plaintiff suffering from fibromyalgia to be credible must specifically identify what testimony is not

credible and what evidence undermines the claimant's complaints by employing ordinary techniques of credibility evaluation. *See Smolen,* 80 F.3d at 1284. Inconsistency with the objective medical evidence was not a clear and convincing reason for the ALJ to reject plaintiff's testimony in this case.

2. *Inconsistency between Plaintiff's Testimony and Her Daily Activities*

With respect to plaintiff's activities of daily living, the ALJ noted that "at the hearing, the claimant reported that she provides transportation for her daughter back and forth to school. She further prepared breakfast for her daughter and folded clothes, as well as read a lot of self-help books and used the computer to research during the relevant period under consideration." AR at 23. The ALJ also noted that "the claimant indicated that [she] researches scrap booking and card making and has the supplies but was easily frustrated when attempting to engage in the activities. In addition, during the relevant period under consideration, the claimant stated that she traveled to Maui for 10 days in 2003." AR at 23-24. The ALJ noted that plaintiff "occasionally went out to lunch with a friend but rested after the outing. In written statements, the claimant reported that she was able to water her plants, clean her countertops, fold clothes, drive and shop for craft items and books approximately once a week." AR at 24. Finally, the ALJ noted that "when seen on April 11, 2002, the claimant reported that she was walking on a daily basis." AR at 24 (citing AR at 316).

Plaintiff's daily activities constitute a clear and convincing reason for the ALJ to challenge plaintiff's credibility, and the ALJ's conclusion was amply supported by the record in this case. *See Reddick*, 157 F.3d at 722. As noted at the outset, credibility determinations are particularly within the province of the ALJ. The ALJ also properly supported his finding with a detailed examination of the record.

3. *Noncompliance with Medications and Treatment Regimen*

The ALJ also found that "the medical record shows the claimant has a history of noncompliance with her medication and treatment regimen." AR at 21. Specifically, the ALJ noted that "[w]hen examined on December 6, 2002, the claimant expressed not checking her glucose as often as recommended . . . When seen on September 18, 2003, it was expressed that the claimant was not taking any TCD, glucophage or sulfonamide. Further, it was noted that the claimant was not monitoring her glucose levels on a regular basis." AR at 21-22 (citing AR 296, 302). In addition, the ALJ noted that on September 12, 2005, "the claimant reported blood sugars from 90 to 180. However, she indicated that she was having difficulty following the diet and had not started the Actos 45 mg as recommended." AR at 22. At that time, plaintiff "had not started her glucogphage as advised. The examining physician [Dr. Anderson] expressed that the claimant was 'resistant to taking any medications.'" AR at 22.

Plaintiff contends that "[t]he ALJ failed to note that Plaintiff had been successful in dieting and had lost 30 pounds. When tested, her glucose was within normal limits." Dkt. 16 at 19 (citing AR at 295, 337). In addition, plaintiff asserts that the ALJ failed to note that plaintiff had reported an inability to exercise due to her pain, and she was having significant problems with her mood on 30 mg per day of Paxil and therefore this was increased. *Id.* (citing AR at 296). In other words, plaintiff contends that the ALJ should have considered this additional evidence before drawing an adverse inference that plaintiff had failed to follow prescribed treatment. The Commissioner responds that the ALJ properly found that "the medical record showed Plaintiff had a history of noncompliance with her medication and treatment regimen." Dkt. 20 at 4 (citing AR at 21).

SSR 96-7p provides that an "individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or

records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure."[2] Specifically, "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide . . . that may explain infrequency or irregular medical visits or failure to seek medical treatment. The adjudicator may need to . . . question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner." SSR 96-7p.

In this case, the ALJ complied with SSR 96-7p during the 2009 hearing because he questioned plaintiff regarding evidence in the medical record suggesting that plaintiff failed to follow prescribed treatment for her diabetes. The ALJ also provided plaintiff with ample opportunity to explain this evidence. AR at 47-48. SSR 96-7 provides that an ALJ should consider plaintiff's explanations for evidence of noncompliance in the record, but does not require an ALJ to accept those explanations.

Specifically, the ALJ asked the plaintiff when she was diagnosed with diabetes, and how she manages it. AR at 47. Plaintiff responded that she took pills until 2008, when she started on insulin. AR at 47. When the ALJ asked plaintiff what her blood sugar reading was that morning, plaintiff responded that she "did not take it this morning." AR at 47. When asked what her reading was the last time she took it, plaintiff responded that "two days ago in the morning" her reading was 246. AR at 47. Plaintiff conceded that she should be taking her reading every day. AR at 47. Plaintiff also asserted that her doctor does not have her on a

---

[2] Social Security Rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration (SSA) interpretations of the statute it administers and of its own regulations," and are binding on all SSA adjudicators. 20 C.F.R. § 402.35(b); *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001). Accordingly, such rulings are given deference by the courts "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

special diet, although she did complete a diabetes program when she was first diagnosed. AR at 47. Plaintiff stated that "it seems like with so many things going on that's just not something I can take care of right now." AR at 47. Later in the hearing, plaintiff also explained that her uncontrolled diabetes prevented her from having carpel tunnel surgery on her hands "because with the diabetes not being controlled, [the doctors] said the chance of infection and the change that it would take so much longer to heal." AR at 51.

Based upon this evidence, plaintiff's noncompliance with recommended treatment was a clear and convincing reason for the ALJ to draw an adverse credibility assessment. Thus, the ALJ provided two clear and convincing reasons for finding plaintiff less than credible in this case. However, as discussed below, this case is being remanded for reevaluation of the medical opinion evidence, plaintiff's RFC, and the lay witness evidence. In light of the ALJ's error in discounting plaintiff's testimony due to inconsistency with objective medical evidence, the ALJ shall also reevaluate plaintiff's credibility on remand.

      B.     <u>The ALJ Erred in Evaluating the Medical Opinion Evidence</u>

          *1.*    *Standards for Reviewing Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*,

157 F.3d 715, 725 (9th Cir. 1988).  "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Id.* (citing *Magallanes*, 881 F.2d at 751).  The ALJ must do more than merely state his conclusions.  "He must set forth his own interpretations and explain why they, rather than the doctors', are correct."  *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).  Such conclusions must at all times be supported by substantial evidence.  *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence.  *Id.*  An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record.  *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors.  *Lester*, 81 F.3d at 831.  However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them.  In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it.  Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2.  Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record.  *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

### 2.    *Dr. Anderson*

Timothy Anderson, D.O., has served as plaintiff's treating physician since 1993.  AR at

1018. On July 28, 2009, Dr. Anderson wrote a letter documenting plaintiff's most prominent problems, which included fibromyalgia with chronic fatigue syndrome, degenerative arthritis in her cervical and lumbar spine and hips, and depression. AR at 1018-19. He also noted that plaintiff's hypertension, diabetes, and hypothyroidism impact her overall health. AR at 1019. With respect to plaintiff's fibromyalgia, Dr. Anderson asserted that "Ms. Durbin has had these symptoms for a number of years and was first diagnosed in 2002. She has become progressively disabled over the past few years due to the above symptoms." AR at 1018. Dr. Anderson opined that plaintiff "has not been capable of gainful employment on a continuous basis since December 31, 2005." AR at 1019. Finally, he opined that plaintiff can lift and carry five pounds frequently and ten pounds occasionally, seldom bend, squat, kneel, crawl and climb, and can tolerate exposure to unprotected heights, moving machinery, marked changes in temperature and humidity, and driving automobile equipment. AR at 1020.

In assigning "little weight" to Dr. Anderson's opinion, the ALJ found that "the objective medical evidence as considered as a whole, as well as the progress notes of Dr. Anderson[,] fails to provide support for this opinion." AR at 24. For example, the ALJ noted that when Dr. Anderson saw plaintiff "on November 14, 2005, the claimant was not in any distress . . . Examination of the extremities was unremarkable." AR at 24. In addition, the ALJ noted that "objective evidence of 'trigger point' testing and results during the relevant period is lacking in the record." AR at 24. The ALJ also noted that when seen one month after the date Dr. Anderson noted plaintiff was unable to work, her physical examination was unchanged. AR at 24-25 (citing AR at 805).

Plaintiff contends that because "no other physician offered an opinion regarding plaintiff's limitations . . . the ALJ's reasons for rejecting Dr. Anderson's opinion must

be clear and convincing." Dkt. 16 at 21. Plaintiff asserts that although "the ALJ rejected Dr. Anderson's report in part because there were no results of trigger points during the relevant period . . . [t]he evidence, however, shows that Plaintiff had trigger points on rheumatological evaluation." Dkt. 16 at 21 (citing AR at 347, 342, 1034). Plaintiff contends that the other medical evidence cited by the ALJ as reasons for discrediting Dr. Anderson's opinion, such as the fact that plaintiff's blood pressure was normal, examinations of her extremities were unremarkable, and plaintiff denied hypoglycemia, "are not relevant to Dr. Anderson's opinion and do not provide valid reasons for rejecting it." *Id.* (citing *Orn*, 495 F.3d at 635). Specifically, plaintiff contends that Dr. Anderson's opinion was largely based on his knowledge of plaintiff's limitations due to pain, as he has been treating plaintiff regularly for many years and pain was a frequent focus on their visits. *Id*. (citing AR at 229, 245, 249, 252-53, 293, 295-96, 298, 300, 310, 313, 317). In the examination cited by the ALJ, for example, plaintiff rated her pain as an eight on a scale of one to ten. AR at 225.

The Commissioner responds that "the ALJ properly considered the medical source opinion" and carefully crafted a RFC assessment. Dkt. 20 at 9-10. The Commissioner also contends that "the ALJ properly found the medical evidence lacked objective findings to support the existence of limitations greater than the ALJ assessed." *Id*. at 10 (citing *Thomas*, 278 F.3d at 957 (providing that a physician's opinion that is based on plaintiff's non-credible subjective complaints is appropriately rejected)).

The ALJ improperly rejected Dr. Anderson's opinion regarding the severity of plaintiff's limitations stemming from her fibromyalgia based upon the lack of objective medical evidence in the record to support his opinion. Specifically, the lack of objective medical findings throughout Dr. Anderson's treatment notes could not serve as a basis for rejecting this treating physician's opinion, because the lack of objective medical evidence was

consistent with the nature and symptoms of fibromyalgia. As discussed above, fibromyalgia's cause or causes are unknown, there is no cure, and of greatest importance to disability law, its symptoms are entirely subjective. There are no objective physical signs, laboratory results, or x-rays that test for the presence or severity of fibromyalgia. *See Jordan v. Northrop*, 370 F.3d 859, 872-73 (9th Cir. 2004) (providing that "[o]bjective tests are administered to rule out other diseases, but do not establish the presence or absence of fibromyalgia."). Thus, the lack of objective medical findings in Dr. Anderson's treatment notes cannot serve as a basis for discounting or discrediting Dr. Anderson's medical opinion. It is error to effectively require "objective evidence" for a disease that eludes such measurement. *See Benecke*, 379 F.3d at 594.

The ALJ's conclusion constituted error for others reasons as well. Even had there been substantial conflicting evidence in the record from another physician regarding the impact of plaintiff's fibromyalgia on her ability to work, all that would mean is that Dr. Anderson's opinion would not have been entitled to "controlling weight." 20 C.F.R. § 404.1527(d)(2). In such a situation, an ALJ must consider the factors listed in § 404.1527(d)(2)-(6) in determining what weight to accord the opinion of the treating physician.[3] No such discussion occurred in the ALJ's decision, although he appears to have concluded that Dr. Anderson's opinion was inconsistent with the opinion of the state agency reviewing physician. AR 24-25. Finally, the ALJ's treatment of Dr. Anderson's conclusion is flawed because there appears to be no deferential treatment of his assessment. Even if contradicted by the opinion of the state agency

---

[3] These include length of the treatment relationship and the frequency of examination; nature and extent of the treatment relationship; supportability; consistency; specialization; and other factors. *Id.*

reviewing physician, as plaintiff's treating physician, Dr. Anderson's opinion was still entitled to deference. *Orn*, 495 F.3d at 632-33.

Accordingly, this case shall be remanded for further administrative proceedings. On remand, the ALJ is directed to reassess Dr. Anderson's medical opinion in light of the direction provided by this opinion.

## C.  The ALJ Did Not Err In Evaluating Plaintiff's Mental Impairments

Plaintiff contends that although the ALJ determined that plaintiff had severe mental impairments, and concluded that plaintiff's impairments did not meet or equal a listing, "longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge . . . must be received into the record as expert opinion evidence and given appropriate weight." SSR 96-6p. Plaintiff asserts that in July 2007, Caral Van Dam, Ph.D. reviewed the record prior to the initial denial and concluded there was "insufficient evidence" to rate plaintiff's mental impairments. Dkt. 16 at 15 (citing AR at 451, 461). Plaintiff contends that "[b]ecause the record contained no opinion regarding equivalence in this case, the ALJ should have called a medical expert to testify regarding the 'B' criteria given the new evidence in this case." *Id.*

The Commissioner responds that the plaintiff "offers no material challenge to the ALJ's analysis that would satisfy her burden to show error in this case. Nor does she offer any plausible theory as to how she meets or equals a Listing. No evidence in the record shows Plaintiff had any marked limitations or a single episode of decompensation." Dkt. 20 at 11. In light of the ALJ's detailed explanation as to why plaintiff did not meet the paragraph B criteria, and because plaintiff "offers no plausible theory showing her impairments meet a listing," the

Commissioner contends that the ALJ's step three finding was supported by substantial evidence. *Id.*

At step three of the evaluation process, the ALJ must determine whether a claimant has an impairment or combination of impairments that meets or equals a condition outlined in the Listing. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). "An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001) (citing *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990)). In order for a claimant's impairment or combination of impairments to meet the requirements of a listing, all of the criteria of that listing and the duration requirement must be satisfied. *See* 20 C.F.R. §§ 404.1525(c)(1)-(3); 416.925(c) (1)-(3); *see also* SSR 83-19 ("[a]n impairment 'meets' a listed condition in the Listing of Impairments only when it manifests the specific findings described in the set of medical criteria for that listed impairment."). To equal a listed impairment, a claimant's impairment or combination of impairments must "at least equal in severity and duration" the criteria of a listed impairment. *See* 20 C.F.R. §§ 404.1526(a), 416.926(a); *see also* SSR 83-19 (a claimant's impairment is "equivalent" to a listing only if her symptoms, signs, and laboratory findings are "at least equivalent in severity" to the criteria for the listed impairment most like the claimant's impairment). A claimant bears the burden of proving that he or she has an impairment that meets or equals the criteria of a listed impairment. *See Burch*, 400 F.3d at 683 ("[A]n ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence.") (citation omitted); *see also Lewis*, 236 F.3d at 514 (holding that an ALJ's failure to consider equivalence was not reversible error where the

claimant offered no theory, plausible or otherwise, as to how his impairments combined to equal a listed impairment).

The decision to call a medical expert for additional evidence on the nature and severity of impairments is required only "[w]hen . . . in the opinion of the [ALJ] or the Appeals Council the symptoms, signs and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable." SSR 96-6p. Here, the ALJ reasonably determined that the medical records did not suggest that plaintiff's mental impairments met a listing. Furthermore, as argued by the Commissioner, plaintiff has offers no plausible theory of equivalency. *See Sullivan v. Zebly*, 493 U.S. 521, 530-31 (1990) ("For a claimant to show that his impairment matches [or is equivalent to] a listing, it must meet all of the specified medical criteria [of the listed impairment]."); *Lewis*, 236 F.3d at 514 (ALJ's failure to consider equivalence was not reversible error where the claimant offered no theory, plausible or otherwise, as to how his impairments combined to equal a listed impairment). Thus, the ALJ did not err in assessing plaintiff's mental impairments at step three.

D.  The ALJ Erred in Assessing Plaintiff's RFC by Failing to Evaluate the Amount of Time Plaintiff Could Sit or Stand During a Typical Work Day

Plaintiff contends that the ALJ's RFC assessment is insufficient because the ALJ did not provide a function-by-function assessment regarding the amount of time plaintiff could sit or stand during an eight-hour workday. Dkt. 16 at 10. Specifically, the ALJ's RFC assessment provides that plaintiff has the ability "to perform light work and lift and carry 20 pounds occasionally and 10 pounds frequently with a sit-stand option at will and an ability to walk 4 hours in an 8-hour workday." AR at 19. Plaintiff argues that SSR 96-8 requires an ALJ to separately address a claimant's limitations and "remaining abilities to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling" in an RFC

assessment.  *Id.*  Specifically, SSR 96-8 provides that "[e]ach function must be considered separately (e.g., 'the individual can walk for 5 out of 8 hours and stand for 6 out of 8 hours'), even if the final RFC assessment will combine activities (e.g., 'walk/stand, lift/carry, push/pull')."  Plaintiff contends that contrary to SSR 96-8's requirement, the ALJ's decision does not provide any separate findings about plaintiff's ability to sit or stand.  Dkt. 16 at 11. Plaintiff contends that this error was harmful, because "it is not clear whether Plaintiff can stand long enough to perform her past relevant work as a pharmacy technician, DOT 074.382-010, which is a light job as it is performed in the national economy."  *Id.*

The Commissioner responds that an ALJ must resolve conflicts in the medical evidence, and in this case, "the ALJ properly found that Plaintiff could periodically alternate sitting and standing at will to relieve pain or discomfort.  This limitation appropriately allowed Plaintiff to dictate when she needed to alternate her sitting and standing."  Dkt. 20 at 14 (citing AR at 19).  The Commissioner also argues that the ALJ afforded "some weight" to the state agency reviewing physician's opinion, which provided that plaintiff could stand and/or walk at least 2 hours out of an 8 hour workday, and sit about 6 hours out of an 8 hour workday.  *Id.* (citing AR at 443-50).

The RFC requires the ALJ to consider a claimant's ability to meet certain job demands, such as physical demands, mental demands, sensory requirements, and other functions.  20 C.F.R. §§ 404.1545(a), 416.945(a).  This requires an assessment of the claimant's exertional limitations (sitting, standing, walking, lifting and carrying abilities) and non-exertional limitations (postural and manipulative abilities and mental capacity).  SSR 96-8p.  Social Security Ruling 96-8p provides that an RFC assessment must "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis."  SSR 96-8p at *1.  *See also* 20 C.F.R. §§ 404.1545(b)-(d); 416.945(b)-(d).

This sequential evaluation process is important because "a failure to first make a function-by-function assessment of the individual's limitations or restrictions could result in the [ALJ] overlooking some of an individual's limitations or restrictions." SSR 96-8p, at *4. Pursuant to the narrative discussion requirement provided in SSR 96-8, in the ALJ's discussion of the claimant's abilities to perform any of the seven strength demands (i.e., sitting and standing), "each function must be considered separately (e.g., 'the individual can walk for 5 out of 8 hours and stand for 6 out of 8 hours'), even if the final RFC assessment will combine activities (e.g., 'walk/stand, lift/carry, push/pull'). It is especially important that adjudicators consider the capacities separately when deciding whether an individual can do past relevant work." SSR 96-8p.

Although the Commissioner implies that the ALJ implicitly adopted the opinion of the state agency reviewing physician with respect to plaintiff's ability to sit or stand in this case, there is no mention of this in the ALJ's decision. To the contrary, the ALJ simply noted that the state agency opinion deserves "some weight." AR at 24. As the ALJ did not provide a function-by-function assessment of plaintiff's physical ability to sit and stand as directed by SSR 96-8p in either the ALJ's narrative or final RFC assessment, the ALJ erred. On remand, the ALJ shall assess plaintiff's work-related abilities on a function-by-function basis, and separately discuss plaintiff's ability to sit and stand during a normal workday.

E.    The ALJ Erred in Evaluating the Lay Witness Testimony of Plaintiff's Husband, Robert Durbin

Plaintiff's husband of thirty-two years, Robert Durbin, also testified during the administrative hearing. AR at 74-80. Specifically, Mr. Durbin testified that after plaintiff injured her back while lifting a tote in 2000, she was in "almost constant pain" which "really started depressing her." AR at 75. He testified that she stopped working because "she was

required to be on her feet all day long with her job and it just got to be too much trouble for her. I mean, she was in constant pain and she would come home at night, and she would just cry . . . [W]e were going to doctors all the time trying to get some help, trying to find out what we could do." AR at 75-76. He also testified that due to the symptoms of her fibromyalgia, back pain, and depression, she had a window in the morning where her pain was a little less so she could take their daughter to school, but "usually by noon she would be flat on her back in bed." AR at 76. Mr. Durbin asserted that by 2002-2003, he had taken over doing the family's laundry, grocery shopping, yard work, and cooking. AR at 76. When the family attempted to take a trip to Idaho, "her back pain was just so great we had to turn around and go home." AR at 78. Although his wife continued to be interested in scrapbooking and other hobbies, she could only engage in such crafts for one hour before having to go lay down. AR at 79. The ALJ summarized Mr. Durbin's testimony, and later stated that Mr. Durbin's testimony concerning the intensity, persistence, and limiting effects of plaintiff's symptoms were not credible to the extent that they were inconsistent with the RFC assessment. AR at 20-21.

In order to determine whether a claimant is disabled, an ALJ may consider lay-witness sources, such as testimony by nurse practitioners, physicians' assistants, and counselors, as well as "non-medical" sources, such as spouses, parents, siblings, and friends. *See* 20 C.F.R. § 404.1513(d). Such testimony regarding a claimant's symptoms or how an impairment affects his ability to work is competent evidence, and cannot be disregarded without comment. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). If an ALJ chooses to discount testimony of a lay witness, he must provide "reasons that are germane to each witness," and may not simply categorically discredit the testimony. *Dodrill,* 12 F.3d at 919.

Plaintiff contends that the ALJ did not provide germane reasons for rejecting the lay witness testimony of plaintiff's husband, Robert Durbin. Dkt. 16 at 22. Specifically, plaintiff

argues that Mr. Durbin testified that plaintiff was more limited than found by the ALJ, because she had to lie down during the day. AR at 76-79. Plaintiff asserts that in this case, "the ALJ simply noted that Mr. Durbin's testimony was not credible to the extent it was inconsistent with his [RFC] assessment, but did not give any specific reasons for rejecting it." Dkt. 16 at 23. The Commissioner responds that "the ALJ properly considered Mr. Durbin's testimony and provided a germane reason for disregarding his opinion that plaintiff was unable to work." Dkt. 20 at 12.

Plaintiff is correct. The ALJ summarily rejected Mr. Durbin's testimony to the extent it was inconsistent with the ALJ's RFC assessment, but did not provide any specific and germane reasons for doing so. On remand, the ALJ is directed to reconsider, or at least further support, his findings with respect to Mr. Durbin's lay witness testimony.

F.     Remand Requires a Reevaluation of the Analysis at Steps Four and Five

Plaintiff contends that the ALJ erred by finding that plaintiff could perform her past relevant work based on the testimony of the vocational expert ("VE") which conflicted with the Dictionary of Occupational Titles ("DOT"). Dkt. 16 at 11. The Commissioner responds that the ALJ did not err by finding that plaintiff was able to perform her past work as generally performed in the national economy. Dkt. 20 at 16.

The Court need not determine whether the ALJ erred at step four because this case is already being remanded for further proceedings. If the ALJ considers testimony from a VE on remand, however, the ALJ is directed to make an appropriate inquiry in accordance with SSR 00-4p to determine whether the testimony conflicts with the DOT. If it does, the ALJ must obtain a reasonable explanation for the conflict before relying on that testimony at steps four or five of the sequential evaluation process.

1          VIII.   CONCLUSION

2                  For the foregoing reasons, the Court recommends that this case be REVERSED and

3          REMANDED to the Commissioner for further proceedings not inconsistent with the Court's

4          instructions.  A proposed order accompanies this Report and Recommendation.

5                  DATED this 4th day of November, 2011.

6

7                                                  *James P. Donohue*
                                           _____
8                                          JAMES P. DONOHUE
                                           United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24